IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Steven R. Isaac, *et al.*, | : | |
| Plaintiffs | : | Civil Action 2:11-cv-450 |
| v. | : | Judge Graham |
| Ebix, Inc., | : | Magistrate Judge Abel |
| Defendant | : | |

## Discovery Dispute Conference Order

On March 15, 2013, counsel for the parties participated in a telephone discovery dispute conference with the Magistrate Judge.

Three disputes were presented. First, Ebix refuses to answer 32 requests for admissions and 41 interrogatories (including subparts) plaintiffs served September 19, 2012.  Ebix asserts that plaintiffs have now served a total of 100 interrogatories. Second, plaintiffs sought customer-by-customer information regarding sales of Ebix's "Bricks" software. Third, plaintiffs questioned why Ebix believes Peak's 2008-09 accounting information is relevant while contending that its own is not.

<u>Written discovery regarding Ebix's calculations of Peak's 2010 gross revenue</u>. Just as in the December 20, 2012 discovery dispute conference, January 8, 2013 Discovery Dispute Conference Order, Doc. 36, PageID 413-15, this dispute concerns discovery of information relevant to determining Peak's 2010 gross revenues for purposes of calculating the Earn-Out plaintiffs are entitled to under the terms of a

September 2009 sale of Peak's capital stock to Ebix. During that conference, Ebix agreed to produce Cherry Bekaert & Holland's complete set of work papers for its 2010 audit of Peak. I recognized that the production would not prejudice plaintiffs' right to seek additional, relevant work papers not included in the production.

Plaintiffs' position in this litigation is that Ebix has engaged in accounting practices and other actions that were intended to reduce Peak's gross revenues and avoid making an Earn-Out payment to them. Plaintiffs maintain that Ebix has engaged in similar practices in the past that enabled it to avoid contractual obligations to pay an Earn-Out.

Ebix did produce the work papers its accountants used to audit Ebix's calculation of Peak's 2010 gross revenues. Plaintiffs then served supplemental interrogatories to identify the numbered revenue accounts contained in the work papers and provide other information they need to understand the work papers. Ebix responded that many of the interrogatories asked what the auditors did or why they made certain audit findings. As Ebix argues, that information is best obtained from the auditors.

Plaintiffs maintain that the audit papers do not show how Ebix calculated the Earn-Out. Ebix's counsel responded that gross revenue determined whether there would be an Earn-Out, and the accountants conducted the audit of Peak's gross revenues in accordance with GAAP.

Plaintiffs countered that Ebix, not Cherry Bekaert & Holland, is responsible for calculating and calculated gross revenue. The accounting firm's audit papers do not

2

show how Ebix calculated gross revenue.

Ebix's counsel agreed to produced information explaining the revenue stream captured by specific audit work papers identified by plaintiffs' counsel.

Plaintiffs' counsel argued that Ebix's answer to Interrogatory Number 4 dodged answering how it calculated Peak's gross revenue. That interrogatory sought all corrections, reductions, or revisions to Peak's 2010 revenue. Ebix responded that Peak's revenue was reflected in databases. Ebix asserts that the only corrections to gross revenue were made in the ordinary course of business. Corrections were limited to adjustments to customers' bills or those made in accordance with GAAP, such as credit memos.

Ebix will produced the Peak database next week.[1] Adjustments to gross revenue are reflected in the billings worksheets produced by Cherry Bekaert & Holland. There are monthly billing summaries that include 5-10 negative entries a months. Those entries reflected credit memos.

It is ORDERED that after Ebix produces the databases and additional documents identifying the revenue accounts that contribute to the stream resulting in gross revenue, plaintiffs may ask defendants for any additional information needed to identify specific numbered accounts and the like. Any such request should include the

---

[1] Peachtree Street was Peak's billing software before it was acquired by Ebix. Peachtree Street was used during 2010 to record Peak's revenue. The revenue numbers from that software were then entered into Ebix's PeopleSoft system. Ebix will produce the Peachtree Street data next week. Ebix's PeopleSoft data was included in its accounts' work papers.

Bates Numbers for representative documents for which they seek identifying information.

> Rule 33(a)(1), Fed. R. Civ. P. provides, in relevant part:
>
> Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).

I determine that plaintiffs have failed to demonstrate good cause for requiring Ebix to answer more than 25 interrogatories at this time. In making this ruling, I recognize that after the discovery outlined above is completed and depositions are taken of several key witnesses knowledgeable about how Ebix calculated Peak's revenue, it may be appropriate for plaintiffs to propound targeted interrogatories or requests for admissions to learn Ebix's position on summary judgment and at trial about how–with specificity–it calculated Peak's 2010 gross revenue.

<u>Software sales by customer</u>. Plaintiffs allege that Ebix ordered the Peak division to cease selling one of its software products and to sell, instead, an Ebix product ("Bricks"), with the promise that Ebix's 2010 gross revenues would be credited with those ("Bricks") sales. Ebix's counsel represented that his client had already produced a spreadsheet for sales of the product ("Bricks") to individual customers during 2009-2010.

<u>2008-09 accounting/audit data</u>. Ebix has served a subpoena on Peak's former accountant for 2008-09 audit work papers. Ebix's counsel said the documents were

4

relevant to the following: (1) as evidence that Peak's 2008 revenues were far below the gross revenue required for there to be a 2010 Earn-Out and (2) to learn how Peak accounted for revenue before November 2009 (possibly demonstrating that Peak's and Ebix's accountings were made using similar accounting practices).

Plaintiffs question why Ebix asserted that its own 2008-09 accounting databases were not relevant to disputed material factual issued in this lawsuit, yet they seek similar data about Peak. Nonetheless, plaintiffs recognize that it is premature at this point to further discuss this potential issue.

s/Mark R. Abel
United States Magistrate Judge